Carolyn Gilbert, WSBA No. 51285
Joseph P. Cutler, WSBA No. 37234
    *E.D. WA Admission pending*
Reina Almon-Griffin, WSBA No. 54651
Jane E. Carmody, WSBA No. 55409
Jacob Stillwell, WSBA No. 48407
PERKINS COIE LLP
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Telephone:  206.359.8000
Facsimile:  206.359.9000
JCutler@perkinscoie.com
CarolynGilbert@perkinscoie.com
RAlmon-Griffin@perkinscoie.com
JCarmody@perkinscoie.com
JStillwell@perkinscoie.com

*Attorneys for Plaintiffs*
*Selah Alliance for Equality, et al.*


Antoinette M. Davis, WSBA No. 29821
Nancy Talner, WSBA No. 11196
Crystal Pardue, WSBA No. 54371
American Civil Liberties Union of
Washington Foundation
P.O. Box 2728
Seattle, WA 98111
Telephone:  206.624.2184
Talner@aclu-wa.org
tdavis@aclu-wa.org
cpardue@aclu-wa.org

*Co-Counsel and Attorneys for Plaintiff Selah*
*Alliance for Equality, et al.*

COMPLAINT (No. ) –1

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

1

2

3

4

5

6

7

8

9

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

10

11

12

13

14

15

SELAH ALLIANCE FOR
EQUALITY, COURTNEY
HERNANDEZ, REV. DONALD
DAVIS JR., LAURA PEREZ,
ANITA CALLAHAN, KALAH
JAMES, CHARLOTTE TOWN,
AMANDA WATSON, and ANNA
WHITLOCK,

No. 1:20-cv-3228

COMPLAINT

JURY DEMAND

16

17

        Plaintiffs,

    v.

18

19

20

21

22

CITY OF SELAH; SHERRY
RAYMOND, in her official capacity
as Mayor of the City of Selah; and
DONALD WAYMAN, in his
official capacity as City
Administrator for the City of Selah;

23

        Defendants.

24

25

26

    Plaintiffs Selah Alliance for Equality, Courtney Hernandez, Reverend Donald

Davis Jr., Laura Perez, Anita Callahan, Kalah James, Charlotte Town, Amanda

COMPLAINT (No. ) – 2

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

Watson, and Anna Whitlock (collectively, "Plaintiffs"), through the undersigned counsel, bring this action pursuant to 42 U.S.C. § 1983, seeking actual and punitive damages to remedy violations of their rights secured by the First and Fourteenth Amendments of the United States Constitution. Plaintiffs also bring a related state claim for violations of Article I, Section 5, of the Washington State Constitution. Plaintiffs submit this Complaint against Defendants City of Selah (the "City" or "Selah"), Mayor Sherry Raymond, and City Administrator Donald Wayman (collectively, "Defendants"), and allege as follows:

## I.    INTRODUCTION

1.    Freedom of speech, Justice Benjamin Cardozo declared, "is the matrix, the indispensable condition of nearly every other form of freedom." It protects our democracy by reinforcing all other rights, helps our society develop and progress, and fosters understanding in diverse communities of ideas. During times of hardship and conflict, the right to speak freely—including to criticize the government without fear of being censored or persecuted—shall not be diminished. Yet this is precisely what is happening in Selah, Washington: City officials have targeted and suppressed messages of racial equality and calls for change to personnel in local municipal government in unconstitutional and unlawful ways.

2.    The actions of the City and its officials sit against a backdrop of significant national turmoil over issues related to racial justice. The death of George Floyd in May 2020 sparked an outpouring of expressive actions by people across the country—millions of people gathered to mourn, protest, and advocate for racial

COMPLAINT (No. ) – 3

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

150258810.4

equality; and to call attention to the systemic injustices that Black people and people of color face daily in America.[1]

3.    In Selah, hundreds of residents participated in peaceful protests. They marched; chalked messages and artwork on streets, sidewalks, and private driveways; and submitted comments to City Council meetings critical of City leadership.

4.    City officials responded by deploying street cleaners to erase the chalked messages and by censoring public comments from City Council meetings. The City's hostility toward these messages, and the activists who expressed them, garnered national attention.[2]

5.    The Selah Alliance for Equality ("S.A.F.E.") was formed in the wake of these City actions. S.A.F.E. is a grassroots community-led organization who seeks to spread the message of anti-racism and equality throughout the City, and to identify and hold the City accountable for its tacit support of—and failures to protect its

---

[1]    *See* Larry Buchanan, Quoctrung Bui & Jugal K. Patel, *Black Lives Matter May Be the Largest Movement in U.S. History*, N.Y. Times (July 3, 2020), https://www.nytimes.com/interactive/2020/07/03/us/george-floyd-protests-crowd-size.html (describing polling data indicating that "about 15 million to 26 million people in the United States" participated in expressive actions regarding racial justice in the weeks following George Floyd's death).

[2]    *See, e.g.*, Mike Baker, *Seeing 'Black Lives Matter' Written in Chalk, One City Declares It a Crime*, N.Y. Times (July 16, 2020), https://www.nytimes.com/2020/07/16/us/sidewalk-chalk-police-selah-washington.html.

COMPLAINT (No. ) – 4

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

citizens from—racial animus and antagonistic leadership in Selah. S.A.F.E.'s efforts have galvanized local community support for an anti-racism movement in Selah.

6.      S.A.F.E.'s members have held public events, participated in local City Council meetings, and recently began displaying various anti-racism signs and signs calling for the replacement of Selah's City Administrator, Donald Wayman. Members of S.A.F.E. placed these signs in public areas on arterial streets, alongside and amidst political campaign signs, yard sale signs, civic event signs, and numerous other temporary signs.

7.      City officials, including Defendant Sherry Raymond, Mayor of Selah ("Defendant Raymond"), and Defendant Donald Wayman ("Defendant Wayman"), acting in their official capacities, have removed and confiscated S.A.F.E.'s signs on the basis that the placements of the signs violated Selah Municipal Code ("SMC") Chapter 10.38.

8.      Even after members of the public and of the City Council raised concerns about the propriety of Defendants' selective enforcement of the SMC (because other signs that likely violated various aspects of the SMC were left untouched), Defendants reiterated in public City Council meetings that they would continue to confiscate the signs. Defendant Wayman, in his official capacity, also encouraged private citizens to remove S.A.F.E.'s signs.

9.      This action thus challenges Defendants' policy, practice, and custom of silencing speech promoting racial equality. Specifically, it alleges that Defendants have injured Plaintiffs in three ways.

10.     *First*, Chapter 10.38 SMC treats signs differently based on the content of their message, which amounts to an unconstitutional content-based restriction on the placement of signs. The City used this content-based restriction to justify its removal of S.A.F.E.'s signs.

COMPLAINT (No. ) – 5

150258810.4

11.   **Second,** Defendants, including Defendants Raymond and Wayman in their official capacities, have selectively targeted S.A.F.E.'s signs for enforcement under Chapter 10.38 SMC, while leaving other signs untouched. This unequal application, particularly considering Defendants' open opposition to S.A.F.E.'s mission and targeting of its individual members in open public meetings, provides powerful evidence that Defendants unconstitutionally removed S.A.F.E.'s signs based on the content of their messages, and were motivated by malicious intent or acted with reckless and callous indifference to Plaintiffs' constitutional rights.

12.   **Third**, the City's removal of S.A.F.E.'s signs represents an unconstitutional retaliation against Plaintiffs for the content of their speech, especially in light of the City's repeated harassment of Plaintiffs directly related to the content of their speech. This harassment includes Defendant Raymond's direct naming and shaming of certain Plaintiffs in public City Council meetings, the City's repeated erasure of chalk art containing messages in support of the Black Lives Matter movement, and its censorship of S.A.F.E. and Plaintiffs' comments submitted to City Council meetings.

13.   The COVID-19 pandemic has amplified the importance of socially-distant forms of expression, making the right to be able to post signs even more important. COVID-19 continues to impact the nation and has been especially impactful in Yakima County. COVID-19 also has disproportionately impacted communities of color.[3] Signs left in public areas are a much safer means of

---

[3]   Studies show that Black, Latinx, and Native American persons are at increased risk of getting sick and dying from COVID-19. *See, e.g.*, *Health Equity Considerations and Racial and Ethnic Minority Groups*, Ctrs. for Disease

COMPLAINT (No. ) – 6

150258810.4

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

expressing and exchanging political messages than many alternatives, such as in-person gatherings, marches, or meetings, during this time of pandemic. S.A.F.E.'s signs are of particular importance to its members given the City's efforts to censor S.A.F.E.'s expression in other ways, for example by refusing to read public comments that they submit, or by selectively washing away their chalked messages. Despite the importance of this medium of expression, Defendants repeatedly removed S.A.F.E. signs containing political messages from public spaces and publicly encouraged private citizens to do the same.

## II.    PARTIES

14.    Plaintiff S.A.F.E. is a grassroots community-led organization based in Yakima County, Washington that endeavors to advance equality and inclusion in Selah and throughout Washington. S.A.F.E., a nearly 700-member strong organization, is led by six Administrators who share decision-making authority. S.A.F.E. purchased and placed temporary signs throughout Selah to voice its support for the Black Lives Matter movement and to speak out against Defendant Wayman, who has openly opposed allowing citizens to voice their support for the Black Lives Matter movement in Selah.

15.    S.A.F.E. also brings this action on behalf of its members who have been injured by Defendants' confiscation of S.A.F.E.'s signs.

---

Control & Prevention (July 24, 2020), https://www.cdc.gov/coronavirus/2019-ncov/community/health-equity/race-ethnicity.html?CDC_AA_refVal=https%3A%2F%2Fwww.cdc.gov%2Fcoronavirus%2F2019-ncov%2Fneed-extra-precautions%2Fracial-ethnic-minorities.html.

COMPLAINT (No. ) – 7

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

150258810.4

16.    Plaintiff Courtney Hernandez is a resident of Yakima County and grew up in Selah. She organized the first Black Lives Matter protest in Selah in June 2020. Her experience growing up in Selah as a Black person was challenging—she frequently experienced systemic racism and was often profiled based on the color of her skin. Her family members have experienced similar treatment. She believes that promoting racial equality in Selah is necessary to create positive change. She is a member and Administrator of S.A.F.E. and organizes events on its behalf. *See* Hernandez Decl. ¶¶ 2–5.

17.    Plaintiff Laura Perez is a resident of Selah, Washington. Plaintiff Perez was the first formal target of the City's selective enforcement of its laws and policies to silence political speech. In June, the Selah Chief of Police sent a letter wrongfully designating chalk art in support of the Black Lives Matter movement in front of her home as "graffiti," and threatened to refer her son (who had not created the art) to municipal court for prosecution if the chalk art continued. Plaintiff Perez is also a member of S.A.F.E. and has donated to further its mission. She placed two S.A.F.E. signs in her yard. She joined S.A.F.E. because she believes the City needs to prioritize racial justice and equity. She has attended protests in Selah to promote equality and the Black Lives Matter movement and organized chalk art events to promote the message of justice and equality. *See* Perez Decl. ¶¶ 2–4, 6–7, 9–11.

18.    Plaintiff Anita Callahan is a resident of Selah, Washington. She is a member and Administrator of S.A.F.E. and has donated to further its mission. Plaintiff Callahan joined S.A.F.E. because the message of inclusivity and racial equality resonated with her. She wanted to help convey to other members of the Selah community that the City has the potential to be a more inclusive community. She leads S.A.F.E.'s outreach to the Selah City Council and encourages members to

COMPLAINT (No. ) – 8

150258810.4

participate by submitting public comments during the City Council meetings. *See* Callahan Decl. ¶¶ 2–5.

19.    Plaintiff Kalah James is a resident of Selah, Washington. She is a member and Administrator of S.A.F.E. and has donated to further its mission. She is part of S.A.F.E.'s education working group, where she works to further inclusivity in Selah schools. She has attended chalking events in Selah to voice her support for racial justice, equality, and the Black Lives Matter movement. Plaintiff James joined S.A.F.E. to further equality and inclusivity in Selah, an issue particularly important to her as the mother of two Black sons. The City's determination to quash messages of equality has made her feel unheard and concerned for her children. *See* James Decl. ¶¶ 2–6, 8, 10.

20.    Plaintiff Donald J. Davis Jr. is a resident of Yakima County, Washington and the current Senior Pastor to Yakima's Bethel African Methodist Episcopal Church. He is an active member of S.A.F.E. and has participated in S.A.F.E.'s events. He assisted with placing S.A.F.E.'s signs throughout Selah, including two outside of his home. He also attended the Black Lives Matter march in Selah. Plaintiff Davis believes very strongly in S.A.F.E.'s message of racial equity and inclusion. Plaintiff Davis grew up in New Orleans, Louisiana during the civil rights movement. He has many childhood memories that include playing behind the Lincoln Memorial whilst Reverend Martin Luther King, Jr. gave his "I have a dream" speech. Witnessing the City's response to the Black Lives Matter movement has brought back dark memories from the civil rights era. Plaintiff Davis believes that S.A.F.E.'s signs are a signal of a unified commitment to fixing deeply rooted racism that still plagues this country. *See* Davis. Decl. ¶¶ 2–7, 11.

21.    Plaintiff Charlotte Town has been a resident of Selah, Washington for the past five years, but is temporarily living in Tri-Cities, Washington. Plaintiff

COMPLAINT (No. ) – 9

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

150258810.4

Town intends to return home to Selah. She is a member and Administrator of S.A.F.E. and has donated to further its mission. She is the Public Outreach Manager and leader of S.A.F.E.'s Media Outreach and Communications working group, where she oversees S.A.F.E.'s message to the local media. In this role, she has met with Mayor Raymond on one occasion to discuss S.A.F.E.'s mission and goals. She has also met with City Council members Russ Carlson and Jacquie Matson on several occasions to discuss the same issues. Plaintiff Town joined S.A.F.E. because the City's attempt to silence S.A.F.E. and its efforts to eliminate messages in support of racial equality deeply concerns her. *See* Town Decl. ¶¶ 2, 5, 8–12.

22.     Plaintiff Amanda Watson is a resident of Sherwood, Oregon, but grew up in Selah, Washington and still has many family members in the City. She is a member and Administrator of S.A.F.E. and has donated to further its mission. She is a part of S.A.F.E.'s Marketing working group, where she works on S.A.F.E.'s branding. Plaintiff Watson joined S.A.F.E. to promote racial equity and inclusivity in Selah, her hometown. *See* Watson Decl. ¶¶ 2–4, 7, 9, 13–14.

23.     Plaintiff Anna Whitlock is a resident of Selah, Washington. Whitlock is a member and Administrator of S.A.F.E. and has donated to further its mission. She joined S.A.F.E. because its message of inclusivity and equity resonated with her. She manages S.A.F.E.'s finances. She has attended protests in Selah to promote equality and the Black Lives Matter movement. She leads S.A.F.E.'s effort to place signs throughout Selah, including its purchase of the signs. *See* Whitlock Decl. ¶¶ 2–3, 5–12.

24.     Defendant City of Selah is a municipality incorporated in the State of Washington.

25.     Defendant Sherry Raymond is Mayor of Selah. She is the "chief executive and administrative officer of the city, in charge of all departments and

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

150258810.4

employees, with authority to designate assistants and department heads." RCW 35A.12.10. Mayor Raymond "see[s] that all laws and ordinances are faithfully enforced and that law and order is maintained in the city, and [has] general supervision of the administration of city government and all city interests." *Id.* Defendant Raymond, personally and through the conduct of her employees, officers, agents, and servants, acted under color of State law at all times relevant to this action.

26.     Defendant Donald Wayman is the City Administrator for the City of Selah. "Under the direction and authority of the mayor," he "supervise[s], administer[s] and coordinate[s] the activities of the various city offices, departments, commissions and boards in carrying out the ordinances and policies of the council." SMC 1.10.015(c)(1). He also "[a]ssist[s] the mayor and council in conducting the city's business in all matters and perform other duties as the mayor and council may direct." SMC 1.10.015(c)(7). Defendant, personally and through the conduct of his employees, officers, agents, and servants, acted under color of State law at all times relevant to this action.

## III.    JURISDICTION AND VENUE

27.     The Court has subject matter jurisdiction over this case under 28 U.S.C. § 1331 because this action presents federal questions and seeks to redress the deprivation of rights under the First and Fourteenth Amendments to the United States Constitution and pursuant to 42 U.S.C. § 1983.

28.     This Court has supplemental subject matter jurisdiction over the pendent state law claims in this case under 28 U.S.C. § 1367. Plaintiffs' supplemental state law claims arise from the same common nucleus of operative facts as Plaintiffs' federal claim. Jurisdiction is appropriate because the state law claims do not raise novel or complex issues of state law, substantially predominate

COMPLAINT (No. ) – 11

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

150258810.4

over the federal claims, or raise another exceptional circumstance to dismiss the state law claims. *See* 28 U.S.C. § 1367(c).

29.    Venue is proper in this District under 28 U.S.C. § 1391(e)(1) because the events giving rise to the claims took place in the Eastern District of Washington.

## IV.    FACTS

**A.    The Black Lives Matter movement has sparked an anti-racism movement around the world, including in Selah.**

30.    On May 25, 2020, George Floyd died while in the custody of police in Minneapolis, Minnesota. Floyd's death—the latest in a long line of deaths that include other Black victims like Breonna Taylor, Michael Brown, Tamir Rice, Philandro Castile, Laquan McDonald, Alton Sterling, Freddie Gray, Walter Scott, Botham Jean, Ahmaud Arbery, Atatiana Jefferson, Ezell Ford, and Jamar Clark— sparked national protest, demonstration, and mourning that continues today. Much of this activism and community expression fall under the banner of the Black Lives Matter movement.

31.    In Selah, Washington, hundreds of residents gathered in public spaces to protest peacefully. For example, on June 6, 2020, Plaintiff Hernandez and a friend organized a march from Selah High School to Selah Civic Center to support the Black Lives Matter movement. Over 150 participants carried signs and chanted "Black Lives Matter;" "no justice, no peace, no racist police;" and "I can't breathe."[4]

---

[4]    Luke Thompson, *More than 150 march for justice in Selah; vigil in Yakima honors black trans lives*, Yakima Herald-Republic (June 7, 2020), https://www.yakimaherald.com/news/local/more-than-150-march-for-justice-in-selah-vigil-in-yakima-honors-black-trans-lives/article_07390f77-c15a-5cc6-a31e-bc352ddca3af.html.

COMPLAINT (No. ) – 12

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

150258810.4

1
2

Week after week, demonstrators turned out to speak against systemic racism and police brutality.

**B.    Early on, the City's actions and comments by its officials showed that the Black Lives Matter movement was unwelcome in Selah.**

3
4
5
6
7
8
9
10

32.    After the march in Selah, Yakima Assistant Mayor Holly Cousens wrote in a Facebook post that during the march, Defendant Wayman confronted her, patted what Cousens believed to be a gun under his jacket, and told her stepfather and her that Selah "did not have problems like Yakima because everybody has a concealed [weapon]."[5] Cousens also reported that "Wayman accused the Black Lives Matter protesters of engaging in 'communist indoctrination.'"[6]

11
12
13
14
15
16

33.    In a public letter, Selah City Councilmember Kevin Wickenhagen restated many of Defendant Wayman's opinions regarding Black Lives Matter, including that the march sounded like "Communist indoctrination" and that Black Lives Matter is "based on neo-Marxism."[7] Wickenhagen also supplied information to support the statements made by Wayman.

17
18
19
20
21
22

[5]    Donald W. Meyers, *Selah Mayor, Councilman Defend Administrator's Remarks About Black Lives Matter*, Yakima Herald-Republic (July 25, 2020), https://www.yakimaherald.com/news/local/selah-mayor-councilman-defend-administrators-remarks-about-black-lives-matter/article_2036f9ae-d194-5295-8351-26e78b5ccdbc.html.

23
24

[6]    *Id.*

[7]    Letter from Kevin Wickenhagen, Selah Councilmember, *available at* https://selahwa.gov/wp-content/uploads/2020/06/Council-Member-Wickenhagen-letter.pdf.

25
26

COMPLAINT (No. ) – 13

150258810.4

34.    Despite the City's public opposition to the Black Lives Matter movement, Selah citizens continued to voice their support for it. For example, some showed their support for the Black Lives Matter movement by creating chalk art messages outside their homes and around the City. Rather than embrace the opportunity to engage in these important discussions, City officials responded by immediately and repeatedly pressure-washing the chalk art away.[8]

35.    One resident who personally witnessed this repeated removal of chalk art was Plaintiff Perez. Selah Chief of Police sent a letter wrongfully designating the chalk art in front of their home as "graffiti" to one of her sons and threatened to refer him to municipal court for prosecution for unlawful graffiti if the chalk art continued (the addressee of the letter was not even the person who created the chalk messages). After undersigned counsel explained to the City Attorney that water-soluble chalk does not constitute a "graffiti implement," the City responded by threatening to criminally prosecute those who continued to use chalk art to express their political viewpoints for criminal mischief.

36.    The tension between City officials and supporters of the Black Lives Matter movement has only deepened, and has been exacerbated by public comments by City officials. For example, Defendant Wayman has called the Black Lives Matter movement "devoid of intellect and reason" and characterized the activists as

---

[8]    Baker, *supra* note 2. YouTube, *Selah City Response to Children Doing Sidewalk Chalk* (July 6, 2020),
    https://www.youtube.com/watch?v=suas5Ka1EO8&feature=youtu.be.

COMPLAINT (No. ) – 14

150258810.4

a "mob."[9] Defendant Wayman has also said that he wants to protect the City from the "mayhem and evil" seen in places like Seattle, where a series of protests led to confrontations between Black Lives Matter protesters and the police.[10]

**C.    S.A.F.E. was formed in response to the repeated acts of censorship by the City and disparaging comments by Defendant Wayman.**

37.    S.A.F.E. grew out of a coalition of Selah and Yakima community members who came together to address concerns about the City's suppression of speech and in reaction to the statements and actions of Defendant Wayman. The group gradually expanded into a forum for discussing shared experiences of racism, bigotry, bias, and violence, and for determining how to make Selah a more inclusive and equitable community for all of its residents.

38.    The group's mission expanded to embrace a broader goal of making Selah a safe place for Black and indigenous people of color, the LBGT+ community, women and girls, and other marginalized groups. S.A.F.E. combined forces with another group, We Care About Black Lives, to make their missions one.

---

[9]    Donald W. Meyers, *Selah Council Votes to Complete Code of Conduct Draft as Wayman Further Defends His Black Lives Matter Remarks*, Yakima Herald-Republic (Aug. 2, 2020), https://www.yakimaherald.com/news/local/selah-council-votes-to-complete-code-of-conduct-draft-as-wayman-further-defends-his-black/article_a87c7f46-4a03-5aa2-9e8b-596c8c41d9f2.html.

[10]    Mike Carter, *Judge Bars Seattle Police from Using Tear Gas, Force Against Nonviolent Protesters*, Seattle Times (June 12, 2020), https://www.seattletimes.com/seattle-news/judge-bars-seattle-police-from-using-tear-gas-force-against-nonviolent-protesters/.

COMPLAINT (No. ) – 15

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

150258810.4

39.    On June 13, 2020, as part of a Black Lives Matter activity, several S.A.F.E. members delivered a set of goals and objectives to the City to emphasize the need for Selah and its government to become more anti-racist. These objectives included, among others:

- Redirection of police funding toward other agencies, entities, and training programs that will reduce the burden on police officers;
- De-escalation training, ongoing racial sensitivity training, and mental health services for police officers;
- Investments in community social services, education, mental health services, housing, and after-school programs;
- Creation of an independent body to investigate allegations of police misconduct;
- Active investment in dismantling the school-to-prison pipeline among Selah minority youth;
- Removal of Defendant Wayman as City Administrator;
- Removal of police from schools;
- Decriminalization of homelessness; and
- Symbolic solidarity with S.A.F.E. objectives by re-naming a Selah City street after Martin Luther King Jr.

40.    Plaintiffs Hernandez, Davis, Perez, Callahan, James, Town, Watson, and Whitlock are members of S.A.F.E. Plaintiffs Callahan, Hernandez, James, Watson, Town, and Whitlock are the six Administrators of S.A.F.E. with decision-making roles.

COMPLAINT (No. ) – 16

150258810.4

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

**D.    The City has repeatedly removed signs placed by S.A.F.E. in public areas and has encouraged private citizens to do the same.**

41.    On or about August 10, 2020, S.A.F.E. designed and purchased yard signs to communicate messages of equality to the public. One group of signs conveyed support for the Black Lives Matter movement, with "BLM," "Black Lives Matter" in the form of the Selah logo (an apple), and the S.A.F.E. logo. Another group of signs called for the termination of Defendant Wayman as City Administrator. A third bore messages such as "Hate has no place in Selah" and "Support Equality for All." In October 2020, S.A.F.E. updated the signs to include space to provided notice of public events to discuss these important social and political issues. The following are pictures of some of these signs:




COMPLAINT (No. ) – 17

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

150258810.4

1
2
3
4
5
6
7
8
9
10



11    42.    S.A.F.E. members contributed to a fund to purchase these signs,

12 spending at least $3,199.10 on signs to date.

13    43.    On or about August 20, 2020, members of S.A.F.E. placed these signs

14 in public areas, including along the medians of arterial streets throughout Selah.

15    44.    The S.A.F.E. signs were placed alongside and amongst numerous other

16 temporary yard signs promoting political candidates, local businesses, and events

17 like garage sales and civic events.  These other signs had been in place for weeks;

18 many remain there today.

19    45.    On information and belief, Defendant Wayman initially directed City

20 employees from the Public Works Department to locate and confiscate S.A.F.E.

21 signs.

22    46.    On information and belief, these employees complied with Defendant

23 Wayman's instructions, bringing the signs back to the Public Works office, where

24 they were held, and were eventually returned to Plaintiff Whitlock.

25
26

COMPLAINT (No. ) – 18

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

150258810.4

47.    On multiple occasions, Defendant Wayman confiscated the S.A.F.E. signs in his capacity as City Administrator, driving a City vehicle, during work hours.

48.    Defendant Raymond has also confiscated S.A.F.E.'s signs.

49.    During a public City Council meeting on October 13, 2020, Defendant Wayman admitted that he and Defendant Raymond confiscated S.A.F.E.'s signs and would continue to do so.[11]

50.    Defendant Wayman also encouraged private citizens to remove S.A.F.E.'s signs at this City Council meeting. He asserted, "it doesn't matter who's picking up these signs because they're illegal signs, period."[12] He advised, "the signs being taken and disposed of by any person or entity is not illegal, and not theft, and it is equivalent to picking up litter."[13]

51.    Upon information and belief, private citizens heeded this advice, including a relative of Defendant Raymond and another private citizen who justified his behavior to a S.A.F.E. Administrator by saying that Defendant Wayman had either instructed him to remove the signs or told him that it was not illegal to do so.

---

[11]    *See* City of Selah, *October 13, 2020 Selah Council Study Session and Meeting*, https://www.youtube.com/watch?v=2AK9bsUtkw8 (last viewed Nov. 12, 2020) (filming Defendant Wayman stating that "[t]he Mayor and I have, we have at times, picked up the signs" and explaining that he has added removing the signs as an "extra duty" pursuant to his job as City Administrator).

[12]    *Id.*

[13]    *Id.*

COMPLAINT (No. ) – 19

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

150258810.4

**E.      Selah Municipal Code, Chapter 10.38.**

52.      The City has asserted that S.A.F.E.'s signs do not comply with Selah's Municipal Code Chapter 10.38.

53.      Under currently-enacted Selah municipal law, no signs governed by the provisions of Chapter 10.38 of the SMC may be erected without first receiving a sign permit from the City building official. *See* SMC 10.38.040.

54.      Upon information and belief, the Selah building official is and was at all relevant times Jeff Peters.

55.      Several categories of signs are exempt from SMC 10.38.040 under SMC 10.38.050. Among these exemptions, stated in SMC 10.83.050(1), are:

> Political signs, located on private property, which, during a campaign, advertise a political party or candidate(s) for public elective office or promote a position on a public issue, provided such signs shall not be posted more than ninety days before the election to which they relate and are removed within fifteen days following the election.

56.      "Political signs" are defined by SMC 10.38.030 as: "a sign advertising a political party or a candidate(s) for public elective offices, or a sign urging a particular vote on a public issue decided by ballot."

57.      Other signs, like political signs, are exempt under the SMC only to the extent that they are on private property and within a given timeframe. *See e.g.*, SMC 10.38.050(2) (signs advertising a public charitable or civic event). Others are exempt regardless of location or time. *See e.g.*, SMC 10.38.050(5) (banners advertising grand openings, special sale events, yard signs, directional signs, and so forth).

58.      Upon information and belief, residents of Selah have a longstanding history of posting signs of many types (business signs, yard sale signs, event announcements, and directional signs) on public property without first obtaining the

COMPLAINT (No. ) – 20

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

150258810.4

permits required by SMC 10.38.040; and those signs are not removed by City personnel nor by private citizens with any regularity.

**F.    Plaintiffs' efforts to recover confiscated and stolen signs and to dispute the City's removal of signs under color of law.**

59.    Plaintiff Anna Whitlock reported the sign removal to the Selah police. On or about August 21, 2020, Plaintiff Whitlock reported that S.A.F.E. was missing 12 signs valued at approximately $60.00. She was informed by the police that the Selah Public Works Department had removed the signs pursuant to SMC 10.38.040.

60.    On or about August 21, 2020, Plaintiff Whitlock went to the Public Works office to retrieve the signs. Joe Henne (Director of Public Works) returned the signs and informed Plaintiff Whitlock that it was illegal to post them on public property because they were not exempt under any provision of Selah's code, including the provision exempting "political signs." Mr. Henne would not discuss the matter further and instead directed Plaintiff Whitlock to speak with Defendant Wayman for more information.

61.    Plaintiff Whitlock then contacted Selah Code Enforcement Officer Erin Barnett for clarification regarding why the signs were not considered political signs, whether and how to obtain a permit for the signs, and whether other nearby non-political signs were likewise required to obtain a permit.

62.    Ms. Barnett advised Plaintiff Whitlock that neither Mr. Peters (the building official responsible for issuing permits) nor she (the Code Enforcement Officer) could answer her questions—she would have to speak with Defendant Wayman directly about the issue.

63.    Later, on August 30, 2020, Plaintiff Whitlock discovered that 63 signs, valued at approximately $378.00, had gone missing from locations around the City. She again contacted the police, who informed her that they did not have information

COMPLAINT (No. ) – 21

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

about who had taken the signs, but that the signs did not appear to meet the requirements of having a proper permit or meet the definition of a "political sign" under Chapter 10.38 SMC. Police informed her that they had forwarded the reports for prosecuting to Prosecuting Attorney Margita Dornay to review for possible criminal charges. When she followed up with police, Plaintiff Whitlock was told that the City would not be prosecuting the sign thefts.

64.    Upon information and belief, City officials disposed of all the S.A.F.E. signs that it has confiscated. The City did not return the signs to Plaintiff Whitlock and did not offer to compensate S.A.F.E. for the removal and/or disposal of the signs.

**G.    Chapter 10.38 SMC has been unequally applied to target and remove S.A.F.E.'s signs.**

65.    Defendants have applied Chapter 10.38 SMC unequally towards S.A.F.E.'s signs. S.A.F.E.'s signs have been repeatedly removed by Defendants, while other signs in the same public areas that violate Chapter 10.38 SMC have been left untouched. For example, political campaign signs, yard sale signs, and civic event signs are left standing for weeks; some in seeming perpetuity.

66.    Some City Council members have expressed concern that Defendants are using Selah's sign policy to target and silence unwelcome messages, by selectively enforcing Chapter 10.30 SMC unevenly against S.A.F.E. signs. During an October 13, 2020 City Council meeting, Council-member Suzanne Vargas stated that she did not think Chapter 10.38 SMC was "equally applied with the vigor" to other signs, and that she believed the City's was "adding to a pattern [] of applying a lot of resources to removing certain things when it's a certain message . . . ."[14]

---

[14]   City of Selah, *supra* note 11.

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

150258810.4

67.    Council-member Russell Carlson agreed, stating, "I don't think they've been pulled down equally, I truly do not."[15] He added that, "I specifically saw a certain propane sign for months, Mr. Wayman, on one of your routes home from work . . . it was removed about a week and a half ago but it has been there for months. So I share similar concerns with Councilwoman Vargas that this enforcement has only begun recently when these signs were contrary to what you wanted . . . . When the S.A.F.E. signs and [Black Lives Matter] signs went up, that's when we started enforcing . . . . We've changed our level of enforcement once those signs went up."[16]

68.    Defendant Raymond tacitly admitted that the enforcement of Chapter 10.38 SMC was motivated by her personal dislike of the signs. She stated, "this is something new, and how would you like it if people put signs up with your name on them all over town [Council-member Carlson]? Are you going to drive by every day and let them stay there?"[17] Defendant Raymond ended the meeting abruptly by stating, "the signs are illegal they are coming down—we will continue to take them down. . . and yes it's new, but we've never had these things happen to us before."[18]

69.    Defendant Wayman defended these actions by citation to the Selah Municipal Code.[19] Finally, Defendant Wayman acknowledged that Chapter 10.38 SMC has not been applied equally to other signs by stating, "we have relaxed some

---

[15]  *Id.*

[16]  *Id.*

[17]  *Id.*

[18]  *Id.*

[19]  Specifically, he stated, "we have a Selah Municipal Code, which we are following . . . ." *Id.*

COMPLAINT (No. ) – 23

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

150258810.4

sign enforcement specifically with some flag signs . . . we generally don't allow those but because of the COVID-19 we have relaxed our enforcement on those."[20]

**H.    Despite S.A.F.E.'s demands, Defendants have failed to adequately address these Constitutional violations, at great harm to Plaintiffs and the principles of free expression in the City of Selah.**

70.    For much of this year, the City has selectively enforced its laws resulting in the repressing of constitutionally protected speech, which has directly contributed to rising local animus and tension.

71.    S.A.F.E. Administrators met with City Council officials and Mayor Raymond on two occasions to discuss City's removal of the Black Lives Matter chalk art, and to urge the City to allow its citizens to speak freely despite Defendants' personal disagreement with the messages.

72.    In a letter dated July 7, 2020, undersigned counsel sent a letter to the City's attorney, Mr. Rob Case, explaining the unconstitutionality of the content-based restrictions the City was imposing on chalk art and warning the City that selective enforcement of laws that suppresses protected speech is an additional constitutional violation. *See* Ex. A (J. Cutler letter to R. Case Jul. 7, 2020).

73.    Instead of engaging in a meaningful discussion with Plaintiffs and remediating their unconstitutional behavior, Defendants' content-based and viewpoint discrimination and selective enforcement of its laws continued, soon expanding from chalk enforcement to sign enforcement.

74.    On October 14, 2020, undersigned counsel sent another letter to the City's attorney, Mr. Case. This letter contained four demands directed to the City regarding its content-based and viewpoint discrimination and selective enforcement

---

[20] *Id.*

COMPLAINT (No. ) – 24

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

150258810.4

1
2

of its municipal code relating to signs. *See* Ex. B (J. Cutler letter to R. Case Oct. 14, 2020).

3
4
5

75.    First, S.A.F.E. demanded that Mr. Case immediately direct Defendant Wayman to stop removing S.A.F.E.'s signs and to cease directing City employees to remove the signs.

6
7

76.    Second, S.A.F.E. demanded that the City publicly and conspicuously warn members of the public that it is illegal to remove S.A.F.E.'s signs.

8
9
10
11
12

77.    Third, S.A.F.E.'s letter also gave notice to the City that its municipal code regarding signs was unconstitutional under recent Washington and U.S. Supreme Court jurisprudence, including *Reed v. Town of Gilbert*, 135 S. Ct. 2218 (2015). S.A.F.E. demanded that the City swiftly revise its municipal code to be content-neutral as required by law.

13
14
15

78.    Fourth, S.A.F.E. demanded that the City account for the signs confiscated by City officials and either return them or provide compensation to Plaintiffs for stolen and destroyed property.

16
17
18
19
20

79.    Additionally, attached to the October 14th letter, Plaintiffs provided the City with materials on constitutional sign enforcement practices. Specifically, the letter referenced and provided a copy of the Municipal Research and Services Center ("MRSC") website and "how-to" guide for municipal compliance with First Amendment principles in their sign codes.[21]

21
22
23
24
25
26

---

[21] Steve Butler, *The Importance of Bringing Your Sign Code Up-to-Date*, Mun. Res. & Servs. Ctr. (Oct. 29, 2015), http://mrsc.org/Home/Stay-Informed/MRSC-Insight/October-2015/The-Importance-of-Your-Sign-Code.aspx.

COMPLAINT (No. ) – 25

150258810.4

80. In response, the City's contract Attorney, Mr. Case, told the City to stop taking S.A.F.E.'s signs—barely addressing just one of S.A.F.E.'s demands.

81. The City's elected and appointed officials said nothing: Defendant Raymond did not issue a widely-available and conspicuous announcement and warning to the public that private sign theft is illegal. Instead, Mr. Case told an October 27, 2020 City Council meeting that individuals who continue to take S.A.F.E.'s signs do so at their own risk. He made no mention of the illegality of sign theft under state law, nor did he emphasize the constitutional protections that signs like those posted by S.A.F.E. enjoy. Defendants have not made any meaningful attempt to deter private citizens from stealing S.A.F.E. signs at their behest or encouragement.

82. Unsurprisingly, Mr. Case's speech did not deter the behavior. S.A.F.E.'s signs continue to disappear.

83. The City has not revised Chapter 10.38 SMC, nor has it indicated that it plans to do so.

84. To date, Defendants have not accounted for signs that they have taken; nor have Defendants compensated S.A.F.E. for its confiscated or discarded signs. Therefore, S.A.F.E. continues to be harmed by Defendants' conduct. S.A.F.E. has spent $3,199.10 to date on 500 signs. At least 275 have been taken.

85. The City's policy, practice, and custom of silencing messages of racial equality—including Defendants Wayman's and Raymond's collection and disposal of S.A.F.E.'s signs across Selah, and Defendants' encouragement that private citizens do the same—has forced S.A.F.E. to divert resources that would otherwise be used to further its mission in order to replace its confiscated and stolen signs. Whitlock Decl. ¶ 15; Watson Decl. ¶ 16; *see* Hernandez Decl. ¶ 15. S.A.F.E.'s signs are critical to its mission of advancing equality and inclusion in Selah and

COMPLAINT (No. ) – 26

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

150258810.4

1
2
3
4
5
6

Washington State—particularly because the City has silenced other forms of political expression in the past months. Therefore, Defendants' interference with S.A.F.E.'s signs has directly frustrated S.A.F.E.'s mission of serving Selah's marginalized community members, promoting equality and inclusion, and advocating for City officials that will consider combatting racism in Selah a priority. Plaintiffs therefore continue to be harmed by Defendants' actions.

## V.    FIRST CAUSE OF ACTION

### *Violation of the First Amendment, United States Constitution*

### *(42 U.S.C. 1983 Defendant City of Selah)*

### Facial Violation

86.    Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth herein.

87.    Plaintiffs' signs constitute political and otherwise protected speech that is afforded great protection by the First Amendment of the United States Constitution.

88.    The City enacted and enforces a municipal code that impermissibly regulates and restricts speech based on the content of that speech.

89.    SMC 10.38.040 prohibits any sign from being erected in traditional public forums without a permit. However, SMC 10.38.050 exempts some signs from this blanket ban, based on the content of their message.

90.    For example, under the exemptions of SMC 10.38.050, certain commercial speech is allowed on public property without a permit, but political speech is not allowed on public property without a permit and is only exempted on private property subject to certain limitations.

COMPLAINT (No. ) – 27

150258810.4

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

91.     These restrictions are based on the content of the signs and are therefore subject to strict scrutiny. Restrictions on speech in traditional public forums, and on the speech of private citizens on private property, must likewise be subjected to strict scrutiny.

92.     For Selah's sign regulations to survive strict scrutiny review, they must serve a compelling governmental interest, and must be narrowly tailored to achieve that purpose, such that it is the least restrictive alternative available.

93.     Chapter 10.38 SMC does not meet this exacting standard. The City cannot proffer a compelling interest justifying not allowing Plaintiffs' signs on public property. Any interest the City may cite would apply equally to signs that have traditionally been permitted in public areas.

94.     Further, a complete ban on Plaintiffs' signs from all public areas is not narrowly tailored to justify any interest that the City may have.

95.     Chapter 10.38 SMC was the moving force behind Defendants' removal of Plaintiffs' signs and derivatively the suppression of Plaintiffs' speech, which amounts to deliberate indifference to Plaintiffs' constitutional rights.

96.     The City is responsible for its officers' and employees' enforcement of Chapter 10.38 SMC who, acting under color of law, by their individual and/or concerted acts and/or omissions, including but not limited to those described herein, enforced Chapter 10.38 SMC in violation of Plaintiffs' constitutional rights.

97.     Plaintiffs have suffered harm as a result of the actions of the City and have been deprived of their rights secured under the First Amendment to the United States Constitution. This deprivation of Plaintiffs' constitutional rights is actionable pursuant to 42 U.S.C. § 1983.

98.     Plaintiffs are entitled to a declaration that Chapter 10.38 SMC infringes on Plaintiffs' First Amendment right of free speech.

COMPLAINT (No. ) – 28

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

150258810.4

99.    Defendants should be enjoined permanently from enforcing Chapter 10.38 SMC.

100.    Plaintiffs are entitled to actual damages, in an amount to be determined by a jury, for Defendants' enforcement of Chapter 10.38 SMC against Plaintiffs in violation of Plaintiffs' free speech rights, in an amount to include the costs of replacing signs removed by the City pursuant to Chapter 10.38 SMC.

## VI.    SECOND CAUSE OF ACTION

### *Violation of the First and Fourteenth Amendments, United States Constitution*
### *(42 U.S.C. 1983 Defendants City of Selah, Raymond, and Wayman)*
### Selective Enforcement

101.    Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth herein.

102.    The First Amendment of the United States Constitution prohibits the City from engaging in selective enforcement of its Municipal Code.

103.    The City has a discriminatory and demonstrable practice of selectively enforcing Chapter 10.38 SMC by removing signs containing certain messages, while leaving other signs untouched. This selective enforcement deprived Plaintiffs of their First Amendment right to free speech, amounted to deliberate indifference to Plaintiffs' constitutional rights, and was the moving force behind the constitutional violation.

104.    Defendants unequal application of Chapter 10.38 SMC, particularly considering Defendants' open opposition to S.A.F.E.'s mission and targeting of its individual members described above, demonstrates that Defendants Raymond and Wayman removed S.A.F.E.'s sign based on the content of their messages, motivated

COMPLAINT (No. ) – 29

Perkins Coie LLP
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

150258810.4

by malicious intent or with reckless and callous indifference to Plaintiffs' constitutional rights.

105.    Defendants Raymond and Wayman, acting under color of state law, by their individual and/or concerted acts and/or omissions, including but not limited to those described herein, have engaged in selective enforcement of Chapter 10.38 SMC by removing signs containing certain messages with while leaving other signs untouched.

106.    Based, in part, on numerous prior communications and warnings from the undersigned counsel regarding suppression of speech in the form of chalked messages, Defendants Raymond and Wayman knew or should have known that selective enforcement of its ordinances against Plaintiffs would violate Plaintiffs' First Amendment rights to freedom of expression and Fourteenth Amendment rights to equal protection of the law based on well-settled law.

107.    Defendants Raymond's and Wayman's enforcement of Chapter 10.38 SMC had a discriminatory effect on Plaintiffs, who have suffered harm as a result of the actions of the City and its officials and have been deprived of their rights under the First and Fourteenth Amendments to the United States Constitution, actionable pursuant to 42 U.S.C. § 1983.

108.    Plaintiffs are entitled to actual and punitive damages, in amounts to be determined by a jury, for Defendants' enforcement of Chapter 10.38 SMC against Plaintiffs in violation of Plaintiffs' free speech rights, where the actual damages amount shall include the costs of replacing signs removed by the City pursuant to Chapter 10.38 SMC.

COMPLAINT (No. ) – 30

150258810.4

1

## VII.   THIRD CAUSE OF ACTION

*Violation of the First Amendment, United States Constitution*

*(42 U.S.C. 1983 Defendants City of Selah, Raymond, and Wayman)*

### Retaliation

109.   Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth herein.

110.   Plaintiffs' signs are speech that is protected by the First Amendment of the United States Constitution.

111.   The First Amendment prohibits government officials from subjecting an individual to retaliatory actions for speaking out.

112.   The City, including Defendant Wayman acting under color of state law by his individual and/or concerted acts and/or omissions, removed Plaintiffs' signs because of and in retaliation against the content of the messages contained therein.

113.   The removal of these signs is part of a greater pattern and practice of harassment against Plaintiffs directly related to the content of their speech, which includes the City's repeated erasure of chalk art containing messages in support of the Black Lives Matter movement and censorship of S.A.F.E. and Plaintiff comments submitted to City Council meetings, among others acts by the City.

114.   Plaintiffs desire to place the signs at issue in public spaces without fear that the City will retaliate against them for expressing their viewpoints and First Amendment speech.

115.   The City's actions would chill the speech of a person of ordinary firmness.

116.   Plaintiffs are entitled to actual and punitive damages, in amounts to be determined by a jury, for Defendants' retaliation against Plaintiffs in violation of

COMPLAINT (No. ) – 31

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

150258810.4

Plaintiffs' free speech rights, where the actual damages amount shall include the costs of replacing signs removed by the City pursuant to Chapter 10.38 SMC.

## VIII. FOURTH CAUSE OF ACTION

*Violation of Article I, Section 5, Washington State Constitution*

*(Defendants City of Selah, Raymond, and Wayman)*

### Facial Violation

117.   Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth herein.

118.   The City is prohibited from enacting laws abridging the freedom of speech under Article 1, Section 5 of the Washington State Constitution.

119.   SMC 10.38.040 prohibits any sign from being erected in traditional public forums without a permit.

120.   SMC 10.38.050 exempts some signs from this blanket ban, based on the content of their message. Certain commercial speech located on public property is exempted under SMC 10.38.050, but political speech is not exempted on public property and is only exempted on private property subject to certain limitations.

121.   SMC 10.38.030 and .050 limit political signs to those "advocating a political party or a candidate(s) for public offices, or a sign urging a particular vote on a public issue decided by ballot," which amounts to a ban on signs expressing views on non-ballot political and social issues or signs that support "causes" rather than specific candidates or ballot initiatives.

122.   SMC 10.38.050 only exempts political signs on private property within 90 days prior to the election to which the signs pertain.

123.   Restrictions on speech in traditional public forums, like public property, must be subjected to the most exacting scrutiny: strict scrutiny.

COMPLAINT (No. ) – 32

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

124.    Content-based restrictions on speech must be subjected to strict scrutiny.

125.    Content-based discrimination on the speech of private citizens on private property is presumptively unconstitutional.

126.    Among other things, the durational limit on political signs such as that contained in the SMC has been declared unconstitutional by well-settled case law.

127.    To survive strict scrutiny, a content-based restriction and a restriction on speech in a traditional public forum must serve a compelling governmental interest and must be narrowly drawn to achieve that purpose, such that it is the least restrictive alternative available.

128.    Chapter 10.38 SMC does not meet this exacting standard and is therefore unconstitutional.

## IX.    FIFTH CAUSE OF ACTION

### *Violation of Article I, Section 5, Washington State Constitution*
### *(Defendants City of Selah, Raymond, and Wayman)*

129.    Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth herein.

130.    Article 1, Section 5 of the Washington State Constitution prohibits the City of Selah from engaging in selective enforcement of its Municipal Code.

131.    Defendants' actions as related herein violated Plaintiffs' right to free speech as set forth in Article I, Section 5 of the Washington State Constitution.

132.    The City and its officials knew or should have known that selective enforcement of its ordinances against Plaintiffs would violate Plaintiffs' right to freedom of speech based on well-settled law.

COMPLAINT (No. ) – 33

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

133.    Plaintiffs have suffered harm as a result of the actions of the City and its officials and have been deprived of their rights secured under the Washington State Constitution.

134.    Plaintiffs are entitled to a declaration that Defendants violated their free speech rights.

135.    Defendants should be enjoined from violating Plaintiffs' free speech rights.

## X.    PRAYER FOR RELIEF

**WHEREFORE,** Plaintiffs pray that this Court grant the following relief:

1.    Preliminary and permanent injunctions restraining and enjoining Defendants from interfering with the exercise of Plaintiffs' right to freedom of speech guaranteed by the First and Fourteenth Amendments to the United States Constitution and Article 1, Section 5 of the Washington State Constitution;

2.    Preliminary and permanent injunctions restraining and enjoining Defendants from interfering with the exercise of Plaintiffs' right to equal protection of the law guaranteed by the First and Fourteenth Amendments to the United States Constitution;

3.    A declaratory judgment that Chapter 10.38 of the Selah Municipal Code is invalid and violates the First Amendment to the United States Constitution and Article I, Section 5 of the Washington State Constitution;

4.    A declaratory judgment that Defendants, in the manner described herein, have violated the First Amendment to the United States Constitution and Article I, Section 5 of the Washington State Constitution;

5.    Compensatory monetary damages against all Defendants jointly and severally in an amount to be determined at trial;

COMPLAINT (No. ) – 34

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

150258810.4

1        6.     Punitive damages against Defendants Sherry Raymond and Donald

2    Wayman in an amount to be determined at trial;

3        7.     Reasonable costs and attorneys' fees incurred in bringing this action

4    pursuant to 42 U.S.C. § 1988;

5        8.     Such other and further relief as the Court deems just and proper.

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

COMPLAINT (No. ) – 35

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

150258810.4

1

2     DATED:  December 7, 2020

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

s/ Carolyn Gilbert
_____
Carolyn Gilbert, WSBA No. 51285
s/ Reina Almon-Griffin
_____
Reina Almon-Griffin, WSBA No. 54651
s/ Jane E. Carmody
_____
Jane E. Carmody, WSBA No. 55409
s/ Jacob Stillwell
_____
Jacob Stillwell, WSBA No. 48407

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Telephone:  206.359.8000
Facsimile:  206.359.9000
JCutler@perkinscoie.com
CarolynGilbert@perkinscoie.com
RAlmon-Griffin@perkinscoie.com
JCarmody@perkinscoie.com
JStillwell@perkinscoie.com

*Attorneys for Plaintiff Selah Alliance for*
*Equality, et al.*

s/ Antoinette M. Davis
_____
Antoinette M. Davis, WSBA No. 29821
s/ Nancy Talner
_____
Nancy Talner, WSBA No. 11196
s/ Crystal Pardue
_____
Crystal Pardue, WSBA No. 54371

**American Civil Liberties Union of**
**Washington Foundation**
P.O. Box 2728
Seattle, WA 98111
Telephone:  206.624.2184
Talner@aclu-wa.org
tdavis@aclu-wa.org

COMPLAINT (No. ) – 36

150258810.4

cpardue@aclu-wa.org

*Co-Counsel and Attorneys for Plaintiff*
*Selah Alliance for Equality, et al.*

COMPLAINT (No. ) – 37

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000