FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Jun 30, 2021

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| SELAH ALLIANCE FOR EQUALITY; COURTNEY HERNANDEZ; REV. DONALD DAVIS, JR.; LAURA PEREZ; ANITA CALLAHAN; KALAH JAMES; CHARLOTTE TOWN; AMANDA WATSON; and ANNA WHITLOCK; | NO: 1:20-CV-3228-RMP |
| | ORDER GRANTING PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION AND MEMORIALIZING COURT'S ORAL RULINGS |
| Plaintiffs, | |
| v. | |
| CITY OF SELAH; SHERRY RAYMOND, in her capacity as Mayor of the City of Selah; and DONALD WAYMAN, in his official capacity as City Administrator for the City of Selah, | |
| Defendants. | |

BEFORE THE COURT is Plaintiffs' Motion for Preliminary Injunction, ECF No. 29.[1] Plaintiff Selah Alliance for Equality and its members placed freestanding signs in public rights-of-way, specifically parking strips along Selah's two main thoroughfares. Plaintiffs' freestanding signs, addressing local leadership and racial injustice, spoke on matters of public concern which lie at the heart of the First Amendment's protection. *See Mahanoy Area Sch. Dist. v. B. L. by & through Levy,* No. 20-255, 2021 WL 2557069, at *12 (U.S. June 23, 2021) (Alito & Gorsuch, J., concurring). Selah city officials, including the individual Defendants, removed Plaintiffs' signs with the purported objective of enforcing the Selah Municipal Code, Chapter 10.38, which prohibits freestanding signs from public property. However, Selah historically had allowed what Selah considers "true political signs" in public rights-of-way pursuant to an admittedly unconstitutional provision of the Code which has yet to be repealed.

Plaintiffs' lawsuit against Selah challenges three provisions of the Selah Municipal Code as facially unconstitutional under the First Amendment and article I, section 5 of the Washington State Constitution. Selah maintains that the challenged

---

[1] The Court heard oral argument via video conference on June 4, 2021. Carolyn Gilbert presented on behalf of Plaintiffs. Defendants were represented by Christopher J. Kerley.

provisions of the Code pass constitutional muster because the Code advances

Selah's interests in city aesthetics and traffic safety.  In moving for injunctive relief,

Plaintiffs requested that the Court enjoin Selah from removing signs, including

S.A.F.E. signs, from public rights-of-way until this litigation is resolved.

The Court having reviewed the pleadings, exhibits, and after hearing oral

argument granted Plaintiffs' Motion for Preliminary Injunction, finding that

Plaintiffs had demonstrated (1) a likelihood of success on the merits of their facial

claims to SMC 10.38.050, 10.38.040, and 10.38.100 under the First Amendment and

article I, section 5 of the Washington State Constitution; (2) that they are likely to

suffer irreparable harm in the absence of preliminary relief; (3) that the balance of

equities tips in Plaintiffs' favor; and (4) an injunction is in the public interest.

This Order memorializes and expands upon the Court's oral rulings.

## BACKGROUND

Plaintiffs Selah Alliance for Equality ("S.A.F.E."), Courtney Hernandez,

Reverend Donald Davis Jr., Laura Perez, Anita Callahan, Kalah James, Charlotte

Town, Amanda Watson, and Anna Whitlock (collectively, "Plaintiffs") facially

challenge three provisions of the Selah Municipal Code ("SMC") Chapter 10.38, the

authority under which officials for the City of Selah have removed freestanding

signs placed by S.A.F.E. in public rights-of-way, specifically in the parking strips

along Selah's two main thoroughfares.  *See* ECF No. 48 at 28–30, 33–34 (First

Amended Complaint).

S.A.F.E. is a community-led organization that "initially came together to address [ ] concerns about City Administrator Donald Wayman," including Mr. Wayman's alleged "comments about Black Lives Matter protests." ECF No. 40-1 at 2. S.A.F.E. represents that the group's objective is to "make[ ] Selah a safe place for Black and indigenous people of color, the LGBT+ community, women and girls, and all other marginalized groups in America." *Id.*

Beginning in August 2020, S.A.F.E. placed temporary signs in public areas, specifically in grassy strips between the sidewalk and street throughout the City of Selah, referred to as parking strips, and among other temporary signs such as political campaign signs, yard sale signs, and civic event signs. ECF Nos. 29 at 4, 48 at 5. These other signs allegedly had been in place for weeks before S.A.F.E. posted its signs, as observed by S.A.F.E members. ECF No. 31 at 4. S.A.F.E.'s signs conveyed support for the Black Lives Matter movement, displaying messages such as "Hate has no place in Selah" and "Support Equality for All," as well as calling for the termination of Defendant Donald Wayman as City Administrator. *See* ECF Nos. 29-2, 29-3, 48 at 17.

Defendant Wayman has referred to Black Lives Matter ("BLM") as "a neo-Marxist organization" and said that a BLM protest he attended, in his opinion, resembled "communist indoctrination." ECF No. 29-4 at 3; *see also City of Selah, June 24, 2020, Selah Council Meeting Special Session*, YouTube (June 25, 2020), https://youtu.be/j7Schq2FhpM?t=2257 (at 00:37:37–00:39:19) (Defendant Wayman

referring to BLM as "devoid of intellect and reason" and a "left-wing mob"). In Defendant Wayman's own words, his opinions are based upon "a significant amount of research on BLM as a movement (which has existed since 2014), its national organizers (including Patrisse Cullors, who describes herself as a 'trained Marxist') and its stated policy objectives (including disruption of the American nuclear family in favor of an all-powerful central government[,]" as well as his career as a Marine Colonel spent responding to "insurgencies overseas." ECF No. 38 at 9.

Plaintiffs contend that officials for the City of Selah, including Defendant Sherry Raymond, Mayor of Selah, and Defendant Wayman removed and confiscated S.A.F.E.'s signs placed in public areas with the purported objective of enforcing Selah Municipal Code ("SMC") Chapter 10.38.[2] *See* ECF No. 29-5.

Plaintiffs seek to preliminarily enjoin the City of Selah from enforcing the following three provisions of SMC 10.38:

> (1) SMC 10.38.040: No sign governed by the provisions of this chapter shall be erected, structurally altered or relocated . . . without first receiving a sign permit from the building official.
>
> (2) SMC 10.38.050: Except when otherwise prohibited, the following signs are exempt from the application, permit and fee requirements of this chapter when the standards of this chapter are met: (1) Political signs, located on private property, which, during a campaign, advertise a political party or candidate(s) for public elective office or promote a position on a public issue provided such signs shall not be posted more than ninety days before the election

---

[2] Chapter 10.38, Sign Regulations, https://selah.municipal.codes/Code/10.38 (last accessed June 28, 2021).

to which they relate and are removed within fifteen days following the election.

(3) SMC 10.38.100: Freestanding signs shall be located entirely on private property and no closer than two feet of the back of curb line.

"Freestanding sign" means "any sign supported by one or more uprights, poles or braces in or upon the ground." SMC 10.38.030. "Political sign" means "a sign advertising a political party or a candidate(s) for public elective offices, or a sign urging a particular vote on a public issue decided by ballot." *Id.*

Plaintiffs argue that they are likely to succeed on the merits of their claims that the three provisions of SMC 10.38, outlined above, are facially unconstitutional under the First Amendment and article I, section 5 of the Washington State Constitution. ECF No. 29 at 4. Defendants City of Selah, Sherry Raymond, and Donald Wayman (collectively "Selah") argue that because SMC 10.38.100 passes muster under the First Amendment, Plaintiffs' motion should be denied. *See* ECF No. 43.

## LEGAL STANDARD

Courts may issue preliminary injunctions to prevent immediate and irreparable injury. Fed. R. Civ. P. 65. Case law emphasizes that a preliminary injunction is an "extraordinary and drastic remedy" that may be granted only upon a "clear showing" that the movant is entitled to such relief. *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997).

In the Ninth Circuit, a movant may demonstrate an entitlement to relief by either of two methods. First, the movant may secure a preliminary injunction by establishing that: (1) it is likely to succeed on the merits; (2) it is likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tip in its favor; and (4) an injunction is in the public interest. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). "A plaintiff need only show success on the merits is likely for one claim, not all claims to meet the burden of establishing an entitlement to a preliminary injunction." *C & C Prop., Inc. v. Shell Co.*, No. 1:14–cv–01889–JAM–JLT, 2015 WL 5604384, at *4 (E.D. Cal. Sept. 23, 2015) (citation omitted).

Alternatively, a movant may prevail via the "serious questions" or "sliding scale" variant of the preliminary injunction standard, by which a court weighs the preliminary injunction factors "on a sliding scale, such that where there are only 'serious questions going to the merits'—that is, less than a 'likelihood of success' on the merits—a preliminary injunction may still issue so long as 'the balance of hardships tips sharply in the plaintiff's favor' and the other two factors are satisfied.'" *Ramos v. Wolf*, 975 F.3d 872, 887–888 (9th Cir. 2020) (quoting *Short v. Brown*, 893 F.3d 671, 675 (9th Cir. 2018) (citations omitted)).

/ / /

/ / /

/ / /

## DISCUSSION

### I.      Likelihood of Success on the Merits

The First Amendment provides that "Congress shall make no law . . . abridging the freedom of speech." U.S. CONST., amend. I.  Longstanding precedent establishes that this restriction applies not only to Congress, but also to municipal governments. *Lovell v. Griffin*, 303 U.S. 444, 450 (1938).  The First Amendment "reflects 'a profound national commitment to the principle that debate on public issues should be uninhibited, robust, and wide-open.'" *Snyder v. Phelps*, 562 U.S. 443, 452 (2011) (quoting *New York Times Co. v. Sullivan*, 376 U.S. 254, 270 (1964)).  "Communication by signs and posters is virtually pure speech." *Baldwin v. Redwood City*, 504 F.2d 1360, 1366 (9th Cir. 1976).

Political speech is "entitled to the fullest possible measure of constitutional protection." *Members of City Council of Los Angeles v. Taxpayers for Vincent*, 466 U.S. 789, 816, (1984); *see also Kaahumanu v. Hawaii*, 682 F.3d 789, 798 (9th Cir. 2012).  "Whatever differences may exist about interpretations of the First Amendment, there is practically universal agreement that a major purpose of that Amendment was to protect the free discussion of governmental affairs." *Burson v. Freeman*, 504 U.S. 191, 196 (1992).

However, a city government "may sometimes curtail speech when necessary to advance a significant and legitimate state interest." *Vincent*, 466 U.S. at 804 (1984) (citing *Schenck v. United States*, 249 U.S. 47, 52 (1919)).  The government

and its political subdivisions may impose reasonable restrictions on the time, place, and manner of protected speech as long as the restrictions are "content-neutral, are narrowly tailored to serve a significant government interest, and leave open ample alternative channels of communication." *Perry Educ. Ass'n v. Perry Local Educators' Ass'n*, 460 U.S. 37, 45 (1983).

Where "a statute imposes a direct restriction on protected First Amendment activity, and where the defect in the statute is that the means chosen to accomplish the State's objectives are too imprecise, so that in all its applications the statute creates an unnecessary risk of chilling free speech, the statute is properly subject to facial attack." *Sec'y of Md. v. Joseph H. Munson Co.*, 467 U.S. 947, 967–68 (1984).

Plaintiffs contend that SMC 10.38.050 (the "Political Sign Provision"), SMC 10.38.040 (the "Permit Process"), and SMC 10.38.100 (the "Public Sign Ban") are facially invalid under the First Amendment and article I, section 5 of the Washington State Constitution. ECF No. 1 at 28–30, 33–35. The Court addresses Plaintiffs' likelihood of success on the merits of their facial claims for each of the three challenged provisions in turn.

### 1. SMC 10.38.050—Political Sign Provision

Under SMC 10.38.050 "political signs, located on private property," are exempt from the permit and fee requirements of chapter 10.38 "provided such signs shall not be posted more than ninety days before the election to which they relate and are removed within fifteen days following the election[.]" "Political sign"

means "a sign advertising a political party or a candidate(s) for public elective offices, or a sign urging a particular vote on a public issue decided by ballot." SMC 10.38.030.

"[A] speech regulation targeted at specific subject matter is content based even if it does not discriminate among viewpoints within that subject matter." *Reed v. Town of Gilbert*, 576 U.S. 155, 170 (2015). Such laws are subject to strict scrutiny, requiring the government to prove that "the restriction furthers a compelling interest and is narrowly tailored to achieve that interest." *Id.* at 170–72 (finding that Town Sign Code prohibiting the display of outdoor signs without a permit, but exempting 23 categories of signs, including "political signs," was content based and did not survive strict scrutiny) (citations omitted). Whether a regulation is either content neutral or content based may be determined on the face of the regulation: "if the statute describes speech by content[,] then it is content based." *Menotti v. City of Seattle*, 409 F.3d 1113, 1129 (9th Cir. 2005) (citing *City of Los Angeles v. Alameda Books, Inc.*, 535 U.S. 425, 448 (2002) (Kennedy, J., concurring)).

Selah concedes that the Political Sign Provision, SMC 10.38.050, is facially unconstitutional under *Reed v. Town of Gilbert* and maintains that, as a result, Selah has no plans to enforce the "dead-letter-and-soon-to-be-replaced code section." ECF Nos. 38 at 19–21, 43 at 9. Selah argues that this concession and subsequent non-enforcement renders moot Plaintiffs' motion for injunctive relief with respect to the

Political Sign Provision.  ECF No. 43 at 14–15.  Plaintiffs argue that their motion as it relates to the Political Sign Provision is not moot because the regulation has not been repealed, thus it not "absolutely clear" that Selah will not resume enforcing SMC 10.38.050.  ECF No. 44 at 4–5 (citing *Adarand Constructors, Inc. v. Slater*, 528 U.S. 216, 222 (2000)).  Plaintiffs further argue that their challenge to SMC 10.38.050 is not moot because Plaintiffs also seek damages.  *Id.* at 5 n.1; *see also* ECF No. 48 at 30.

The standard for proving that a case has been mooted by a defendant's voluntary conduct is "stringent."  *White v. Lee*, 227 F.3d 1214, 1243 (9th Cir. 2000) (citing *Friends of the Earth, Inc., v. Laidlaw Env't Servs. (TOC) Inc.*, 528 U.S. 167, 189 (2000)).  "A case might become moot if subsequent events made it absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur."  *United States v. Concentrated Phosphate Export Ass'n*, 393 U.S. 199, 203 (1968).  "The 'heavy burden of persua[ding]' the court that the challenged conduct cannot reasonably be expected to start up again lies with the party asserting mootness."  *Friends of the Earth, Inc.*, 528 U.S. at 189 (quoting *Concentrated Phosphate Export Ass'n*, 393 U.S. at 203).

Although Selah represents to the Court that it has suspended enforcement of the Political Sign Provision, ECF No. 43 at 15, Selah has not carried the "heavy burden of persuading" the Court that enforcement of SMC 10.38.050 could not reasonably be expected to recur where the regulation has yet to be repealed or

amended. *See* ECF No. 29-13 (Municipal Attorney Rob Case advising Plaintiffs' counsel that "the city's Public Works personnel and Mr. Wayman have been instructed to not take any action for the time being with regard to the supposedly 'political' signs that members of the so-called SAFE group have installed in the city rights of way."); ECF No. 38 at 19 (Defendant Wayman stating that SMC 10.38.050 "has not been invoked by Selah for several months" and "it is scheduled to be repealed and replaced soon."). Contrary to the memorandum in *White*, which was "fully supportive of First Amendment rights" and addressed "all of the objectionable measures that [ ] officials took against the plaintiffs," Selah city officials, including the individual Defendants, being instructed to not take any action "for the time being" does not amount to permanent change. *White*, 227 F.3d at 1243. Thus, intervening events have not "irrevocably eradicated the effects of the alleged violation." *County of Los Angeles v. Davis*, 440 U.S. 625, 631 (1979).

Furthermore, Selah concedes that "[a]t times, during the summer of 2020, the City removed a small number of the Plaintiffs' signs from public property because of the City's belief in the constitutionality of SMC 10.38.050, addressing 'political' signs." *See* ECF No. 43 at 9. In light of this concession, and Plaintiffs' claim for damages, Plaintiffs' motion for injunctive relief is not moot as it relates to SMC 10.38.050.

The Court finds that Plaintiffs have demonstrated a likelihood of success on the merits with respect to their facial challenge to SMC 10.38.050 and the balance of

equities, discussed *infra*, tips sharply in favor of Plaintiffs in light of Selah's concession that SMC 10.38.050 is unconstitutional.

### 2. SMC 10.38.040—Permit Process

Under SMC 10.38.040, "no sign governed by the provisions of this chapter shall be erected, structurally altered or relocated . . . without first receiving a sign permit from the building official." The regulation does not distinguish between signs placed on public or private property, or between public areas. The "building official" is appointed by the Mayor of Selah. SMC 10.38.030; SMC 11.04.010. However, when Plaintiff Anna Whitlock preliminarily inquired about a permit on behalf of S.A.F.E., Defendant Wayman "handled the matter directly." ECF No. 38 at 25–26. At oral argument, when asked who the "permitting official" is, Selah responded that the permitting official during the summer of 2020 was Defendant Wayman. ECF No. 55 at 20.

Plaintiffs argue that the Permit Process, codified at SMC 10.38.040, violates the First Amendment because it delegates excessive discretion to a public official. ECF No. 29 at 18. Selah's briefing in response to Plaintiffs' Motion for Preliminary Injunction, ECF No. 43, is silent as to the constitutionality of SMC 10.38.040. At oral argument, Selah argued that the provision passed muster because the permitting official had to comply with the remainder of the sign code, including content-neutral requirements.

Content-neutral permitting schemes must not vest unbridled discretion in permitting authorities and must be narrowly tailored to serve a significant government interest. *Thomas v. Chicago Park Dist.*, 534 U.S. 316, 322 (2002). "The First Amendment demands that a licensing scheme 'contain adequate standards to guide [an] official's discretion and render it subject to effective judicial review.'" *Battle v. City of Seattle*, 89 F. Supp. 3d 1092, 1099 (W.D. Wash. 2015) (quoting *Thomas*, 534 U.S. at 323). In order to curtail the risk that officials will use their discretion to suppress a particular point of view, "a law subjecting the exercise of First Amendment freedoms to the prior restraint of a license must contain narrow, objective, and definite standards to guide the licensing authority." *Forsyth County v. Nationalist Movement*, 505 U.S. 123, 131 (1992) (internal quotation marks and citation omitted). Absent those standards, the official can employ "post hoc rationalizations," or use "shifting or illegitimate criteria," thus "making it difficult for courts to determine in any particular case whether the licensor is permitting favorable, and suppressing unfavorable, expression." *City of Lakewood v. Plain Dealer Publ'g Co.*, 486 U.S. 750, 758 (1988).

In evaluating the facial challenge to the Permit Process, the Court considers "the [City's] authoritative constructions of the ordinance, including its own implementation and interpretation of it." *Forsyth County*, 505 U.S. at 131. Here, under Selah's Permit Process, the building official is under no mandate to (1) grant permit applications, (2) issue a decision, (3) process permit applications in a timely

manner, or (4) explain why a permit was denied. *See, e.g.*, *Battle*, 89 F. Supp. 3d at 1101–1102 ("Although the Ordinance declares that [Seattle Department of Transportation] 'shall examine each application for a permit for compliance with Title 15' . . . almost nothing mandates that SDOT do anything else."); *see also Forsyth County*, 505 U.S. at 133 (finding ordinance facially invalid where administrator was not required to "provide any explanation for his decision," rendering that decision "unreviewable"); *contra Thomas*, 534 U.S. at 318–19, 324 (upholding ordinance which allowed district to deny a permit on 13 specified grounds, required applications to be processed within 28 days, and required the district to "clearly set forth in writing the grounds for denial and, where feasible, must propose measures to cure defects in the application.").

Selah's Permit Process falls a step shorter than the ordinance at issue in *Battle v. City of Seattle*, which directed the permitting official to consider each application for compliance with other requirements in the city code, but did not mandate that an application be approved, even where the application met all the requirements. *See Battle*, 89 F. Supp. 3d at 1101–102, 1105 ("[T]he Court concludes that the Ordinance and Standards do not sufficiently confine SDOT's discretion to deny permits."). Selah's other requirements for signs, including those dictating noncommunicative sign characteristics such as size and spacing, are not incorporated by reference nor subject to binding consideration by the building official in approving or denying a permit application submitted under SMC

10.38.040. *See Plain Dealer Pub. Co.*, 486 U.S. at 770 ("The doctrine [forbidding unbridled discretion] requires that the limits the city claims are implicit in its law be made explicit by textual incorporation, binding judicial or administrative construction, or well-established practice.").

In sum, the City's Permit Process "contain[s] none of the hallmarks of laws that courts have found provide adequate guideposts for discretion in granting or denying permits." *Battle*, 89 F. Supp. 3d at 1103. There are no enunciated standards to ensure constitutional decisionmaking or provide a foundation for judicial review. Accordingly, Plaintiffs have met their burden of showing a likelihood of success on the merits with respect to their facial challenge to SMC 10.38.040.

### 3. SMC 10.38.100—Public Sign Ban

Under SMC 10.38.100, "[f]reestanding signs shall be located entirely on private property and no closer than two feet of the back of curb line." A "freestanding sign" is "any sign supported by one or more uprights, poles or braces in or upon the ground." SMC 10.38.030. Selah maintains that "the City has never allowed free-standing signs on public-rights-of-way (other than true political signs during political seasons under the now known to be unconstitutional SMC 10.38.050, and the Plaintiffs' signs during the fall 2020 campaign season)." ECF No. 43 at 10.

As a threshold matter, the Court rejects Selah's and Defendant Wayman's repeated references to "true political signs," *see* ECF Nos. 38, 43 at 9–10, which seemingly is limited to advertising a political party or candidate or urging a particular vote on a public issue decided by ballot, as unduly narrow for the purpose of analyzing First Amendment protections. *See* 10.38.030. Communications calling for a change in local municipal leadership, in addition to those communications addressing societal changes related to policing practices and racial injustice, a topic of conservation which is presently at the national forefront, may be reasonably included in the realm of core political speech, and is definitively commentary on matters of public concern.

Speech on matters of public concern, including sensitive subjects like politics, religion, and social relations, lie at the heart of the First Amendment's protection. *Mahanoy Area Sch. Dist. v. B. L. by & through Levy,* No. 20-255, 2021 WL 2557069, at *12 (U.S. June 23, 2021) (Alito & Gorsuch, J., concurring) (citing *Lane v. Franks*, 573 U.S. 228, 235 (2014)) ("Speech by citizens on matters of public concern lies at the heart of the First Amendment"); *see also Hustler Magazine, Inc. v. Falwell*, 485 U.S. 46, 50 (1988) ("At the heart of the First Amendment is the recognition of the fundamental importance of the free flow of ideas and opinions on matters of public interest and concern"); *Connick v. Myers*, 461 U.S. 138, 145 (1983) ("[S]peech on public issues occupies the highest rung of

the hierarchy of First Amendment values, and is entitled to special protection") (internal quotation marks omitted).

As recently enunciated by the Supreme Court, "[o]ur representative democracy only works if we protect the 'marketplace of ideas.'" *Mahanoy Area Sch. Dist.*, No. 20-255, 2021 WL 2557069, at *5; *see also Snyder*, 562 U.S. at 461 (First Amendment protects "even hurtful speech on public issues to ensure that we do not stifle public debate"). "[I]t is a 'bedrock principle' that speech may not be suppressed simply because it expresses ideas that are 'offensive or disagreeable.'" *Mahanoy Area Sch. Dist.*, No. 20-255, 2021 WL 2557069 at *13 (Alito & Gorsuch, J., concurring) (quoting *Texas v. Johnson*, 491 U. S. 397, 414 (1989)). "Nor may speech be curtailed because it invites dispute, creates dissatisfaction with conditions the way they are, or even stirs people to anger." *Young v. American Mini Theaters, Inc.*, 427 U.S. 50, 63–64 (1976).

The Court analyzes the likelihood of success on the merits of Plaintiffs' facial challenge to SMC 10.38.100 under the First Amendment and article I, section 5 of the Washington State Constitution. However, since the parties dispute whether the parking strips at issue where Plaintiffs placed their signs constitute a "public forum," the Court first employs a "forum analysis."

### A. Public Forum

Whereas Plaintiffs argue that the parking strips are traditional public forums, ECF No. 29 at 12–13, 22, Selah contends that the parking strips are not the type of

property used for communicative purposes, but rather, are "vegetation beds." ECF No. 43 at 12. Selah claims that "the only structures the City has ever allowed within the parking strips are overhead light posts and official government signs, such as traffic signs." *Id.*; *see also* ECF No. 55 at 13 (Selah stating at oral argument that the purpose of the parking strips is to provide an "aesthetically pleasing buffer" between the street and the sidewalk).

In *American Civil Liberties Union of Nevada v. City of Las Vegas*, 333 F.3d 1092, 1101–1102 (9th Cir. 2003), the Ninth Circuit identified three factors in determining whether an area constitutes a traditional public forum: "the actual use and purposes of the property, particularly its status as a public thoroughfare and availability of free public access to the area; the area's physical characteristics, including its location and the existence of clear boundaries; and the traditional or historic use of both the property in question and other similar properties." *Sanders v. City of Seattle*, 160 Wn. 2d 198, 213, 156 P.3d 874 (2007); *see also City of Seattle v. Mighty Movers, Inc.*, 152 Wn. 2d 343, 351–352, 96 P.3d 979 (2004) ("Although this court has recognized that the free speech clauses of the state and federal constitutions are different in wording and effect, we have adopted the federal analysis to determine whether a particular class of public property is a traditional public forum under our state constitution.").

First, although Selah contends that the purpose of the parking strips is to provide an "aesthetically pleasing buffer between the street and the sidewalk,"

ECF No. 55 at 13, the evidence submitted in support of Plaintiffs' Motion for

Preliminary Injunction suggest that the parking strips are more than "vegetation

beds." ECF No. 43 at 12; *see* ECF No. 29-2, 29-3 (depicting S.A.F.E. signs

alongside numerous other freestanding signs placed in a parking strip); *see also* 29-

5 (video showing Defendant Wayman removing S.A.F.E. signs from a parking

strip but leaving other signs placed in the same area).

There also is no evidence to refute that the parking strips are freely

accessible to the public. *See* ECF No. 38-3 (depicting protestors holding signs and

standing on sidewalk and grassy area). Even if the primary use of the property is

not as a park or public thoroughfare, this is not dispositive. *See ACLU*, 333 F.3d at

1101–1102 ("The fact that the primary use of the property is not as a park or public

thoroughfare is irrelevant as long as there is no concrete evidence that use for

expressive activity would significantly disrupt the principal uses.") (emphasis in

original).

Second, with respect to the physical characteristics of the forum, the parking

strips, adjacent to the street and sidewalk on either side, are centrally located in the

City of Selah and integrated into the surrounding locale so as to provide "no

alteration of expectations that would justify nonpublic forum status." *ACLU*, 333

F.3d at 1102; *see also see also Baldwin*, 540 F.2d at 1366 ("Posters and signs are

erected adjacent to 'traditional first amendment forums, such as public sidewalks

and other thoroughfares[.]'") (quoting *Aiona v. Pai*, 516 F.2d 892, 893 (9th Cir. 1975)).

The Court also considers the parking strips in the specific context of the City of Selah, with a population of approximately 8,000.[3]  As described by Plaintiffs at oral argument, the Selah's one arterial street, First Street, is analogous to Selah's public square.  ECF No. 55 at 24; *see United States v. Kokinda*, 497 U.S. 720, 727–728 (distinguishing a "quintessential public sidewalk" which "facilitate[s] the daily commerce and life of the neighborhood or city" from the "postal sidewalk" at issue).  Although the adjacent sidewalk is paved, and the parking strips are landscaped with grass, this "cosmetic difference . . . [is] insufficient to distinguish an area from surrounding public forums."  *Id.* (citing *Venetian Casino Resort v. Local Joint Exec. Bd. of Las Vegas*, 257 F.3d 937, 945 (9th Cir. 2001)).

Finally, the court considers the historic use of the parking strips as a public forum.  Plaintiffs allege that S.A.F.E. signs were placed in the parking strip[s] alongside numerous other temporary signs promoting political candidates, local businesses, civic events, and garage sales.  ECF No. 29 at 5.  Although Selah disputes that it has ever allowed freestanding signs in practice, Selah concedes that it historically has allowed "true political signs during political seasons" to be

---

[3] United States Census Bureau Quick Facts, https://www.census.gov/quickfacts/fact/table/selahcitywashington/PST045219 (accessed June 25, 2021)

placed in the public-rights-of-way.  ECF No. 43 at 10.  Thus, at a minimum, the City of Selah has allowed the parking strips to be used as a forum for signs that it has deemed "true political" communications.

Upon considering the three factors discussed *supra* and based upon the evidence presented, the Court finds that for the purposes of this motion, Plaintiffs have shown a likelihood of success in proving that the parking strips in the City of Selah along First Street constitute a public forum.  *Accord Collier v. City of Yakima*, 121 Wn. 2d 737, 747, 854 P.2d 1046 (1993) ("The parking strips in which Collier and his supporters placed his political signs lie between the 'streets and sidewalks' and thus are part of the 'traditional public forum'."); *see also Mighty Movers, Inc.*, 152 Wn. 2d at 359, 96 P.3d 979 (finding that utility poles are not public forums, but noting that "based upon federal cases, this court determined that parking strips are public forums.").

## B. Article I, Section 5 of the Washington Constitution

Article 1, section 5 of the Washington Constitution provides that "[e]very person may freely speak, write and publish on all subjects, being responsible for the abuse of that right."  The Washington Supreme Court has adopted a more stringent standard for speech regulations under the Washington Constitution than its federal counterpart.  *State of Mireles*, 16 Wn. App. 2d. 641, 652 n. 4, 482 P.3d 942 (2021) (citing *Bering v. SHARE*, 106 Wn. 2d 212, 234, 721 P.2d 918 (1986)).  "Because [Plaintiff] brings challenges under both the Washington and Federal

constitutions, we apply the more stringent standard here." *Mireles*, 16 Wn. 2d at 652 n. 4, 482 P.3d 942.

Plaintiffs argue that the City's Public Sign Ban cannot survive strict scrutiny under article I, section 5 of the Washington State Constitution. ECF 44 at 6–7. Because SMC 10.38.100 does not ban freestanding signs altogether, only those signs that are placed in public-rights-of-way, the Court analyzes the regulation as a time, place, and manner restriction. *See e.g.*, *Collier*, 121 Wn. 2d at 747, 854 P.2d 1046 ("Since the Tacoma ordinances do not ban political signs altogether, we analyze the ordinances as time, place, and manner restrictions.").

Under the Washington State Constitution, the government may impose reasonable restrictions on the time, place, and manner of protected speech in a public forum, provided that the restrictions are (1) content neutral; (2) narrowly tailored to serve a compelling government interest; and (3) leave open ample alternative channels of communication. *See Collier*, 121 Wn. 2d at 747–48, 82 P.2d 1046. The same standard applies to time, place, and manner restrictions on speech that are viewpoint neutral, but subject-matter based. *Id.* at 753, 82 P.2d 1046.

The Washington State Supreme Court diverges from the U.S. Supreme Court on the government interest element given the broad language of article I, section 5. *Id.* To pass muster under the Washington Constitution, a time, place, and manner restriction on protected speech in a public forum must serve a compelling government interest, rather than a significant one. *Bering*, 106 Wn.2d at 234, 721

P.2d 918; *see also Sanders*, 160 Wn. 2d at 209–10, 156 P.3d 874.  The government

bears the burden of justifying its restrictions on speech.  *City of Lakewood v. Willis*,

186 Wn. 2d 210, 217, 375 P.3d 1056 (2016) (citing *Collier* 121 Wn. 2d at 753–59,

854 P.2d 1046).

 In *Collier v. City of Tacoma*, city employees removed signs displaying "Mike

Collier for Congress" placed in parking strips within the City of Tacoma because the

signs were posted more than 60 days prior to the primary election.  121 Wn. 2d at

743, 854 P.2d 1046.  The Tacoma Municipal Code provision at issue prohibited

signs "on any public street or highway or upon any curbstone . . . or other thing

situated upon any public street or highway or any publicly owned property within

the City of Tacoma . . . ."  *Id.*  The ordinance carved out an exception for "political

signs" placed on parking strips 60 days prior to and 7 days after a primary or general

election.  *Id.* at 742–43 (defining "political signs" as "[a]ll signs . . . relating to the

nomination or election of any individual for a public political office or advocating

any measure to be voted on at any special or general election.").

 In upholding the lower court's decision that the ordinance unconstitutionally

restricted Plaintiff's free speech, the Washington Supreme Court found that "[t]he

parking strips in which Collier and his supporters placed his political signs lie

between 'streets and sidewalks' and thus are part of the 'traditional public forum.'"

*Id.* at 747.  Furthermore, in balancing the competing interests, the State Supreme

Court held that the City of Tacoma's interests in city aesthetics and traffic safety

were not "state interests sufficiently compelling to outweigh the restrictions imposed on Collier's free speech." *Id.* at 754 ("Tacoma has made no showing on the record that it is seriously and comprehensively addressing aesthetic or traffic safety concerns other than through the ordinances in question."). Finally, with respect to adequate alternative channels of communication, the State Supreme Court found that the yard sign was the most practically available and satisfactory alternative, notwithstanding other mediums of expression being available. *Id.* at 760.

Selah argues that SMC 10.38.100, which is now purportedly being enforced against all signs placed in the public right-of-way, including political speech, is "narrowly tailored to accomplish the City's goals of eliminating visual blight, and promoting aesthetics, business development and success, and traffic safety." ECF No. 43 at 17.

Although Selah may have an interest in protecting the aesthetic appearance of the City by avoiding visual clutter, such interests may not be considered compelling. *Foti v. City of Menlo Park*, 146 F.3d 629, 637 (9th Cir. 1998) (citing *Metromedia, Inc., v. City of San Diego*, 453 U.S. 490, 520 (1981)); *see also Catsiff v. McCarty*, 167 Wn. App. 698, 705, 274 P.3d 1063 (2012) ("[T]he *Collier* court departed from *Lotze* solely as to the extent *Lotze* made aesthetics and traffic safety compelling interests justifying restrictions on political speech.") (discussing *State v. Lotze*, 92 Wn. 2d 52, 593 P.2d 811 (1979)). "Although aesthetics has been determined to be a significant governmental interest . . . it has not been determined to be an interest

sufficiently compelling to justify restrictions on political speech in a public forum." *Collier*, 121 Wn. 2d at 754, 854 P.2d 1046 (internal citation omitted). Furthermore, with respect to its aesthetic interests, Selah must show that it is "seriously and comprehensively addressing aesthetic concerns with respect to its environment." *Id.* at 758, 854 P.2d 1046.

Selah's previous allowance of some freestanding signs in public rights-of-way, but not others, conflicts with its stated interest in "eliminating visual blight" and traffic safety. *See* ECF Nos. 29-2, 29-3; *see also Collier*, 121 Wn. 2d at 756, 854 P.2d 1046 ("Once political signs are allowed on a temporary basis, 'it is difficult to imagine how prohibiting political signs at other times significantly promotes highway safety.'") (quoting *Van v. Travel Info. Council*, 52 Or. App. 399, 412, 628 P.2d 1217 (Or. Ct. App. 1981)). Furthermore, there is no evidence supporting the assertion that freestanding signs placed in the parking strips are in fact hazardous to traffic or block pedestrian access. *See Baldwin*, 540 F.2d at 1370 ("The availability of less restrictive means is demonstrated by another ordinance specifically prohibiting the erection of signs that may obstruct the vision of drivers or interfere with traffic."). The Court finds it difficult to reconcile how any individual or individuals holding signs on a public sidewalk in the City of Selah, directly adjacent to the area at issue, is more or less hazardous to traffic than the same sign being planted in the ground. *See, e.g.*, ECF No. 38-3.

With respect to alternative channels of communication, "alternatives are not adequate if they do not allow the speaker to reach her intended audience, the location is part of the expressive message, or there are not opportunities for spontaneity." *Lone Star Sec. & Video, Inc.*, *v. City of Los Angeles*, 989 F. Supp. 2d 981, 992 (9th Cir. 2013) (citations omitted). "The cost and convenience of alternatives may also be a factor." *Id.*

The intended audience for S.A.F.E.'s freestanding signs is drivers and passersby on the sidewalk. ECF No. 44 at 11. Selah contends that "a free-standing sign placed in the City right-of-way is not the only way an individual or organization can convey a message, political or otherwise, in the City of Selah." ECF No. 43 at 19. Selah further states that "[P]laintiffs and others are free to express their ideas through marches, signs, banners, speeches, press conferences and chalk marking, and Plaintiffs have done all of that in Selah." *Id.* However, the City has removed chalk art from Selah's sidewalks and streets and articulated a commitment to removing any "graffiti" from the public thoroughfare. ECF No. 29-8 at 7; *see also Osmar v. City of Orlando*, No. 6:12–cv–185–Orl–DAB, 2012 WL 1252684, at *3 (finding that chalk expression, due to its temporary nature, "evoke[s] the classic example of the exercise of free speech: the soap box orator who knows his words may be lost to the winds."); *see also Mahoney v. Doe*, 642 F.3d 1112, 1116 (D.C. Cir. 2011) (noting that the statute at issue criminalized conduct that is "clearly expressive," including "painting, drawing, or writing," as well as conduct "like

vandalizing or physically damaging property" which is "primarily destructive and only secondarily expressive").

The Court finds that Plaintiffs have demonstrated a likelihood of success on the merits with respect to the facial validity of SMC 10.38.100 under article I, section 5 of the Washington State Constitution, and in the alternative, have at least shown that there are serious questions on the merits for purposes of employing the Ninth Circuit's "sliding scale" approach.

**C. First Amendment**

Under the First Amendment, the government may impose reasonable restrictions on the time, place, and manner of protected speech in a public forum,[4] provided the restrictions are content-neutral, are narrowly tailored to serve a significant governmental interest, and leave open ample channels of communication. *Ward v. Rock Against Racism*, 491 U.S. 781, 791 (1989).

---

[4] The same standard is applied under article I, section 5 for speech in a nonpublic forum as is applied under the First Amendment:  speech in nonpublic forums may be restricted if the distinctions drawn are reasonable in light of the purpose served by the forum and are viewpoint neutral.  *Mighty Movers, Inc.*, 152 Wn. 2d at 350–351 (internal citations and quotations omitted).

Selah argues that SMC 10.38.100 passes constitutional muster under the First Amendment because it is content-neutral, advances significant City interests in eliminating visual blight, promoting aesthetics, business development and success, and traffic safety, and leaves the Plaintiffs ample alternative means of expressing their message and beliefs. ECF No. 43 at 15–16 (citing *Reed*, 576 U.S. at 173) ("And on public property, the Town may go a long way toward entirely forbidding the posting of signs, so long as it does so in an evenhanded, content-neutral manner."); *see also Lone Star Sec. and Video, Inc.*, 827 F.3d at 1200 ("The Supreme Court and this Court have repeatedly confirmed that local governments may exercise their police powers to advance these goals by prohibiting intrusive or unsightly forms of expression.).

Plaintiffs argue that SMC 10.38.100 is not narrowly tailored to achieve compelling interests and Selah has failed to leave open adequate alternative means for communication of Plaintiffs' message. ECF Nos. 29 at 22–24, 44 at 10–11.

As interpreted by Selah, SMC 10.38.100 prohibits all freestanding signs, including political speech, regardless of message or content, in the public rights-of-way. ECF No. 43 at 3. Selah's assertion that "free-standing signs have never been allowed on parking strips in Selah which exist on public rights-of-way," ECF No. 43 at 12, is plainly contradicted by the record evidence and Selah's own concession that "true political signs" have historically been allowed in the same location. ECF No. 29-2, 29-3, 43 at 10. As articulated *supra* and at oral argument, Selah has failed to

support that banning all freestanding signs from the public rights-of-way furthers the City's interests in aesthetics and traffic safety when Selah has, until recently, allowed freestanding signs in the parking strips and where less restrictive means exist to regulate the noncommunicative aspects of freestanding signs, such as the size and spacing. *See Collier*, 121 Wn. 2d at 761, 854 P.2d 1046.

The Court finds that Plaintiffs have demonstrated a likelihood of success on the merits with respect to the facial validity of SMC 10.38.100 under the First Amendment, and in the alternative, have at least shown that there are serious questions on the merits for purposes of employing the Ninth Circuit's "sliding scale" approach of granting a motion for a preliminary injunction.

## II. Irreparable Harm

Plaintiffs argue that irreparable harm accompanies any infringement on First Amendment freedoms, no matter how minimal in duration. *See* ECF No. 44 at 12 (citing *Brown v. Cal. Dep't of Transp.*, 321 F.3d 1217, 1226 (9th Cir. 2003)). Selah maintains that there is no irreparable harm to Plaintiffs because they have ample alternative means of communicating the same messages. *See* ECF No. 43 at 19–20. Therefore, Selah argues that the irreparable harm prong should be given minimal weight. *Id*.

As noted by Plaintiffs, both the Ninth Circuit and the Supreme Court have held repeatedly that "[t]he loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Brown*, 321 F.3d at

1225 (citing *Elrod v. Burns*, 427 U.S. 347, 373 (1976)).  "The harm is particularly

irreparable where, as here, a plaintiff seeks to engage in political speech . . . ."  *Klein

v. City of San Clemente*, 584 F.3d 1196, 1208 (9th Cir. 2009).  "In situations where

the plaintiff's 'First Amendment rights [are] being chilled daily, the need for

immediate injunctive relief without further delay is, in fact, a direct corollary of the

matter's great importance.'"  *Cuviello v. City of Vallejo*, 944 F.3d 816, 833 (9th Cir.

2019) (quoting *Sanders Cnty. Republican Cent. Comm. v. Bullock*, 698 F.3d 741,

748 (9th Cir. 2012)).

Here, although Selah asserts that the Sign Code leaves Plaintiffs "ample

alternative opportunities," those same alternatives, such as sidewalk chalk in public

thoroughfares, may also subject Plaintiffs to criminal prosecution or civil liability

pursuant to RCW 9A.48.090 according to the City of Selah Municipal Attorney, Rob

Case.  *See* ECF No. 45-6 at 5 ("Those who deface public streets via any means,

including via the usage of traditional stick chalk, may also be criminally prosecuted

or sued civilly.").  Holding Selah to its word, a child who drew a flower, sunshine,

or peace sign with traditional stick chalk in a public street could be subject to

criminal prosecution or civil liability.  In July of 2020,  did not "presently plan on

criminally prosecuting or suing civilly those who merely use traditional stick chalk

on public sidewalks/walkways" but "reserve[d] the right to change its criminal

prosecution and civil enforcement priorities at a later date."  *Id.*; *see* ECF No. 29-11

(article by The New York Times entitled "Seeing 'Black Lives Matter' Written in

Chalk, One City Declares It a Crime" reporting on the removal of chalk drawings in the streets of Selah and noting that "[c]halk art has long been a tableau for social activism, a form of instant commentary that takes political expression quite literally onto the streets.").

Accordingly, the Court finds that there is a likelihood of irreparable injury to Plaintiff in the absence of injunctive relief precluding the City of Selah from enforcing the Political Sign Provision, Permit Process, and Public Sign Ban.

### III. Balance of Equities

Selah argues that "allowing the posting of free-standing signs in the City rights-of-way by the Plaintiffs or anyone else would present multiple hardships and issues for the City, including blight, litter, interference with mowing, water and other maintenance, interfering with traffic, and potentially frustrating the success of businesses, particularly those located adjacent to parking strips." ECF No. 43 at 20. Plaintiffs argue that costs such as increased mowing are merely incidental costs of complying with constitutional obligations under the First Amendment and the Washington State Constitution that the City must bear. *See* ECF No. 44 at 12. Plaintiffs further argue that these costs cannot outweigh the harm to Plaintiffs for infringement on their free speech rights, the protection of which has been recognized to align with the public interest. *See id*.

Selah has not pointed to any evidence in the record that suggests it will suffer the stated hardships such as interference with mowing, water, and other

maintenance, traffic, and the success of businesses. "True political signs," which were previously allowed to be placed in the parking strips, presented identical inconveniences related to mowing, water, and other maintenance, as well as the potential interference with traffic, and the success of businesses. Furthermore, a freestanding sign placed directly under a permanent highway street sign, for example, presents no greater interference with maintaining the grass than that which already exists. *See, e.g.*, ECF No. 29-16 (depicting an individual placing a S.A.F.E. sign directly under a highway street sign along South First Street in Selah).

Even assuming these purported interferences to be supported by evidence, in balancing the competing interests, Selah's asserted hardships regarding aesthetics and lawn maintenance fall well short of outweighing Plaintiffs' interests in free speech. Thus, the Court finds that the balance of equities tips sharply in favor of Plaintiffs.

## IV. Public Interest

Although the interests of the government are often aligned with the public interest, in the First Amendment context, courts have found the interests of plaintiffs suing the government to instead align with the public interest because "[t]he constitutional guarantee of free speech serves significant societal interests wholly apart from the speaker's interest in self-expression." *Pacific Gas and Elec. Co. v. Public Utilities Comm'n of California*, 475 U.S. 1, 8 (1986) (internal quotation marks and citation omitted). "By protecting those who wish to enter the marketplace

of ideas from government attack, the First Amendment protects the public's interest in receiving information. *Id*.

The Court finds that because Plaintiffs have raised a colorable free speech claim under the First Amendment and Washington State Constitution and demonstrated irreparable harm, the public interest will be benefitted by a preliminary injunction.

## CONCLUSION

Upon weighing the *Winter* factors, the Court finds that Plaintiffs have demonstrated (1) a likelihood of success on the merits of their facial claims to SMC 10.38.050, 10.38.040, and 10.38.100 under the First Amendment and article I, section 5 of the Washington State Constitution; (2) that they are likely to suffer irreparable harm in the absence of preliminary relief; (3) that the balance of equities tips in Plaintiffs' favor; and (4) an injunction is in the public interest. *Winter*, 555 U.S. at 20.

In the alternative, under the "sliding scale" variant of the *Winter* standard, the Court finds that there are serious questions going to the merits of Plaintiffs' claims and the balance of hardships tips sharply in Plaintiffs' favor so a preliminary injunction may issue given that the other two factors have been satisfied. *Ramos*, 975 F.2d at 887–88.

/ / /

/ / /

Accordingly, **IT IS HEREBY ORDERED**:

1.  Upon weighing the *Winter* factors, Plaintiffs' Motion for Preliminary Injunction, **ECF No. 29**, is **GRANTED**.

2.  The City of Selah, and its officials, including the named individual Defendants, are enjoined from enforcing SMC 10.38.050, 10.38.040, and 10.38.100, or removing signs (including S.A.F.E. signs) from public rights-of-way pursuant thereto, until this litigation is resolved.

3.  Plaintiffs are not required to post a bond.

**IT IS SO ORDERED**. The District Court Clerk is directed to enter this Order and provide copies to counsel.

**DATED** June 30, 2021.

_s/ Rosanna Malouf Peterson_
ROSANNA MALOUF PETERSON
United States District Judge